ESTATE OF REED et al., Appellants,

v.

HADLEY et al., Appellees.

[Cite as Estate of Reed v. Hadley, 163 Ohio App.3d 464, 2005-Ohio-5016.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 04CA41.

Decided Sept. 19, 2005.

466

Graham McClelland Ransbottom Co., L.P.A., and Gary M. Smith, for appellants.

Isaac Brant Ledman & Teetor, L.L.P., J. Stephen Teetor, and Paul A. MacKenzie, for appellees.

HARSHA, Judge.

{¶ 1} The estate of Corinne M. Reed and Jacqueline Parker (collectively, "estate") appeal from the trial court's denial of their motion for class certification. The estate argues that the court abused its discretion by denying certification based on its findings that the proposed class members did not all sign identical contracts and that proof of legal injuries to class members required individual evidence of damages. We conclude that it was unreasonable to find that the class should not be certified without examining the contracts to determine whether the similarities in the contracts outweighed the differences. And we conclude that basing the decision not to certify the class on the fact that class members would have to make individualized proof of damages was also unreasonable. Differences in the amount of damages among proposed class members do not automatically preclude class certification when the calculation of damages is not particularly complicated. Here, the putative class members' damages could be easily computed by determining the difference between the contractual price and the

price actually charged. We therefore reverse the judgment and remand this matter to the trial court for reconsideration of the appropriateness of class certification under the correct legal standard.

{¶ 2} In April 1991, Corinne Reed entered into a "Funeral Preplanning Agreement" with Hadley Funeral Home, Inc., for the arrangement of funeral goods and services to be provided at the time of her death. Reed also purchased a life insurance policy through a Hadley Funeral Home agent. The policy was underwritten by Forethought Life Insurance Company ("Forethought") and the death benefit was payable to Hadley Funeral Home for use towards Reed's funeral expenses. Reed also established a savings account that was payable upon her death to Hadley Funeral Home to further offset any funeral expenses.

{¶ 3} The "total guaranteed funeral price" for the funeral goods and services selected by Reed was $4,601, while the "non-guaranteed cash advance items" totaled $262.80, for a "total guaranteed and non-guaranteed funeral price" of $4,863.80. Guaranteed items include those provided by the funeral home, i.e., funeral services, caskets, and burial containers; and nonguaranteed items include those provided by outside vendors, i.e., flowers, obituary notices, clergy honoraria, and music. Because Hadley Funeral Home does not provide the nonguaranteed goods or services itself, it cannot guarantee those items.

{¶ 4} Reed died in May 2001, and following her burial, Hadley Funeral Home provided her daughter, Jacqueline Parker, with an itemized statement for its services. The statement totaled $6,654.31, including $5,404.00 for the funeral service package, the casket, and the vault, and $1,057.00 for cash-advance items, including vault delivery, copies of the death certificate, grave preparation, and flowers. Hadley Funeral Home received benefits from the Forethought life insurance policy totaling $6,658.50 ($6,654.31 for the funeral costs and $4.19 in interest). Reed's beneficiaries received the remainder of the policy benefits totaling $35.18 ($35.16 plus $.02 interest). Hadley Funeral Home refunded the money in the savings account to the beneficiaries.

{¶ 5} The estate filed a complaint against John Hadley, a shareholder in Hadley Funeral Home, and Hadley Funeral Home (collectively, "Hadley defendants") and a motion for class certification. The complaint contained both class and individual claims.

{¶ 6} The class claims arose from Hadley Funeral Home's use of the pre-need contracts for the sale of funeral goods and services. The estate sought relief for "all persons (including an estate, heir, legatee or personal representative who is a successor in interest to such person now deceased) who at any time on or after April 29, 1988 did or will enter any transaction with defendants for the pre-need purchase of specific funeral goods or services at specified prices."

{¶ 7} The estate also proposed the creation of three subclasses to allow for the differing statutes of limitation and types of remedies available. Proposed subclass one included "all class members to whom defendants did not provide one or more goods or services specified in, or charged or retained any amount in excess of a guaranteed price as specified in, the pre-need contract with defendants." Proposed subclass two included "all class members who (1) did or will enter any transaction with defendants for the pre-need purchase of specific funeral goods or services at specified prices at any time on or after April 29, 2001, or who (2) were at any time on or after April 29, 2001 billed for goods or services provided by defendants under any pre-need contract of this type, whenever consummated." Proposed subclass three included "all class members (1) who entered that transaction on or after April 29, 2001; or (2) as to whom at any time on or after April 29, 2001, defendants did not provide one or more goods or services specified in, or charged or retained any amount in excess of a guaranteed price specified in, any pre-need contract with defendants."

{¶ 8} The class claims include breach of contract, breach of fiduciary duty, and violations of the Ohio Consumer Sales Practices Act ("CSPA"). The estate also brought individual claims for negligence and violations of the CSPA related to the care and preparation of Reed's body for burial.

{¶ 9} The trial court denied the estate's motion for class certification. The court found that the contract that Reed signed allowed Hadley Funeral Home to increase the "guaranteed price" of the funeral. The court also concluded that Hadley Funeral Home had used three different insurance companies, and consequently at least three different pre-need contracts, during the proposed class period. Finally, the court found that "[w]here proof of fact of damages requires evidence concerning individual class members, the common question of fact becomes subordinate to individual issues, thereby rendering class certification problematic." Because of the different contracts and the absence of proof of a class pecuniary loss, the court concluded that class certification was inappropriate.

{¶ 10} The estate appealed the denial of class certification, assigning the following errors:

Assignment of Error I:

The lower court abused its discretion when it refused certification because absent members did not all receive one, single standard consumer form, in that:

1.   the Rule 23 standards do not require such absolute identity;

2.   the material representations of the various forms used were similar and involved common questions of law;

3. defendants' customary sale practices were consistent and commonly applied to all absent members, despite differences in the forms used; and

4. all class and subclass members were given and entitled to rely on the "Statement of Funeral Goods and Services," a single, standard consumer form applicable in all transactions.

Assignment of Error II:

The lower court abused its discretion to the extent it denied certification on the premise that proof of legal injury required individual evidence, or that the necessity of submitting some individual evidence precludes satisfaction of the predominance standard of Rule 23(b)(3).

Assignment of Error III:

The trial court would have abused its discretion had it found the plaintiff-appellant failed to establish any other [R]ule 23 factor.

{¶ 11} Trial courts have broad discretion in determining whether to certify a case as a class action. *Marks v. C.P. Chem. Co.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, syllabus. Therefore, unless we find an abuse of that discretion, we must affirm the trial court's decision. Id. An abuse of discretion is more than a mere error of judgment; normally it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 232, 12 OBR 313, 466 N.E.2d 875. A trial court that routinely handles case-management problems is in the best position to analyze the difficulties that can be anticipated in the litigation of class actions. *Marks* at 201, 31 OBR 398, 509 N.E.2d 1249.

{¶ 12} In *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, the Ohio Supreme Court established clear standards for reviewing a lower court's class-action-certification decision. A trial court must make seven affirmative findings before a case may be certified as a class action. Two of these prerequisites are implicitly required by Civ.R. 23, while five others are explicitly set forth in the rule. Id. at paragraph one of the syllabus. The failure of a trial court to find, by a preponderance of the evidence, that all seven Civ.R. 23 requirements have been met will result in the denial of class certification. Id. at 94, 521 N.E.2d 1091.

{¶ 13} The first implicit requirement is the existence of an unambiguous and identifiable class. Id. at paragraph two of the syllabus. For example, classes such as "all poor people" are too amorphous to permit identification with a reasonable effort. The second implicit prerequisite is that the class representatives must be members of that unambiguous and identifiable class. Id. at 96, 521 N.E.2d 1091.

{¶ 14} Four of the explicit requirements are set forth in Civ.R. 23(A). A member of a class may sue as a representative party on behalf of all class members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. These four requirements are often referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively.

{¶ 15} The final explicit prerequisite is set forth in Civ.R. 23(B), which requires a finding that the proposed action falls within one of its three applicable subsections:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

{¶ 16} The trial court must assume the truth of the allegations in the complaint and not consider the merits of the case when deciding a Civ.R. 23 motion. See *Ojalvo,* 12 Ohio St.3d at 233, 12 OBR 313, 466 N.E.2d 875 (holding that a court's considerations do not involve the action's merits when it decides the propriety of class certification), and *Ungerbuhler v. Butler Rural Elec. Coop., Inc.* (Jan. 31, 1985), Hamilton App. No. C–840227, 1985 WL 9305 (stating that

allegations in the complaint are assumed to be true for purposes of determining a Civ.R. 23 motion to certify a class). Although the trial court found that the contract that Reed signed allowed Hadley Funeral Home to charge in excess of the "guaranteed funeral price," the court did not specifically rely on this finding when it overruled the motion for class certification. Therefore, we assume that the court did not improperly assume that Reed's class claims were meritless and deny the motion on that basis. Rather, the court apparently rejected the motion for class certification for two reasons—because different contracts were signed by different members of the proposed class and because there is no evidence that all class members were damaged.

{¶ 17} In *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 694 N.E.2d 442, the Ohio Supreme Court recognized that, while there is "no explicit requirement in Civ.R. 23 that the trial court make formal findings to support its decision on a motion for class certification, there are compelling policy reasons for doing so." Id. at 70, 694 N.E.2d 442. The court then suggested that a trial court make separate written findings as to each of the class requirements and specify its reasons for each finding. Id.

{¶ 18} Here, the trial court made no findings as to whether an unambiguous and identifiable class existed, the estate shared the same injuries as the class it sought to represent, the class was so numerous that joinder of all members was impracticable, or the representative parties would fairly and adequately protect the interests of the class. Therefore, we assume that the trial court found each of these prerequisites to be met.

{¶ 19} The court also failed to specify which of the remaining prerequisites it found that the estate failed to satisfy. The court's specific findings lead us to conclude that the court may have found any of the following prerequisites lacking: questions of law or fact common to the class (commonality), claims of the representative parties are typical of the claims of the class (typicality), or the requirements of Civ.R. 23(B)(3). Therefore, we will address each of these three requirements.

### Commonality

{¶ 20} Civ.R. 23(A)(2) requires the presence of "questions of law or fact common to the class." Courts have generally given this requirement a permissive application. *Marks*, supra, at 202, 31 OBR 398, 509 N.E.2d 1249, citing 7A Wright, Miller & Kane, Federal Practice & Procedure at 169–228, Section 1762. This provision does not require that all questions of law or fact raised in the dispute be common to all the parties. Id. at 202, 509 N.E.2d 1249, citing 3B Moore's Federal Practice (1987) 230159, Paragraph 23.06–1. There may be differing factual and legal issues, but such differences do not enter into the

analysis until the court begins to consider the Civ.R. 23(B)(3) requirement of predominance and superiority. Id.

{¶ 21} The commonality requirement is satisfied if the court finds a "common nucleus of operative facts." *Miles v. N.J. Motors* (1972), 32 Ohio App.2d 350, 61 O.O.2d 518, 291 N.E.2d 758, syllabus. The federal courts have found commonality when there is a common fact situation or generally common legal and factual questions. *Resnick v. Am. Dental Assn.* (N.D.Ill.1981), 90 F.R.D. 530; *Sweet v. Gen. Tire & Rubber Co.* (N.D.Ohio 1976), 74 F.R.D. 333.

{¶ 22} Here, the trial court found that Hadley Funeral Home used different contracts over the class period because some of the pre-need arrangements were funded through payment-on-death savings accounts while others were funded through life insurance policies. Further, Hadley Funeral Home used three different insurance companies to underwrite the life insurance policies at various times, and each company used different contracts. The court may have concluded that this case was inappropriate for class certification based on these findings.

{¶ 23} However, we conclude that the court abused its discretion if it denied the motion for class certification based upon a finding that commonality was lacking. Although Hadley used different contracts, there was clearly a "common nucleus of fact." Hadley Funeral Home sold each of the proposed class members a "guaranteed price funeral" and each contract included a form specifying which funeral products purchased were "guaranteed" and which were "non-guaranteed." Moreover, John Hadley acknowledged that the same sales practices applied when selling pre-need arrangements. Although the use of differing contracts may preclude a finding that common questions of law predominate as required by Civ.R. 23(B)(3), this fact alone does not negate the commonality requirement.

## Typicality

{¶ 24} Under Civ.R. 23(A)(3), the claims or defenses of the representatives must be typical of the claims or defenses of the class. The purpose of this provision is to protect absent class members. 3B Moore's Federal Practice, supra, at 23–178, Paragraph 23.06–2. This requirement is met when there is no express conflict between the representative parties and the class. *Marks*, 31 Ohio St.3d at 202, 31 OBR 398, 509 N.E.2d 1249, citing *Caruso v. Celsius Insulation Resources, Inc.* (M.D.Pa.1984), 101 F.R.D. 530, 534. Accordingly, absent a serious discrepancy between the position of the representatives and that of the class, the focus of typicality should remain on the essential conforming characteristics of the defendants' actions and the claims arising from them. *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 727 N.E.2d 1265.

{¶ 25} The Hadley defendants contend that the estate's claims are not typical of the class claims because they include claims arising out of the embalming and preparation of Reed's body for burial. Although the estate asserts some individual claims that are not typical to the class, this fact alone does not preclude its representation of the class. See *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 74, 694 N.E.2d 442. The bulk of the estate's claims and those of the proposed class arise from Hadley Funeral Home's sale of pre-need contracts. There is no evidence of any conflict between the estate and the proposed class members. Therefore, to the extent that the court found such a conflict existed and denied class certification on this basis, the trial court abused its discretion.

### Civ.R. 23(B)(3) Requirements

{¶ 26} As to subclasses one and three, the estate sought class certification under Civ.R. 23(B)(3),[1] which promotes the class action format in cases where the efficiency and economy of common adjudication outweigh the interests of individual autonomy. *Warner*, supra, 36 Ohio St.3d at 96, 521 N.E.2d 1091; *Marks*, supra, 31 Ohio St.3d at 204, 31 OBR 398, 509 N.E.2d 1249. "This portion of the rule also was expected to be particularly helpful in enabling numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights." 7A Wright, Miller & Kane, supra, at 518, Section 1777.

{¶ 27} As the United States Supreme Court explained:

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

*Amchem Prod., Inc. v. Windsor* (1997), 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689, quoting *Mace v. Van Ru Credit Corp.* (C.A.7, 1997), 109 F.3d 338, 344.

### 1. Common Questions of Law and Fact Predominate

{¶ 28} Before granting class certification under Civ.R. 23(B)(3), the court must find that the questions of law or fact common to members of the class predominate over individual questions. For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, the

---

1. The estate sought certification of subclass two under Civ.R. 23(B)(2). The trial court did not address the requirements of Civ.R. 23(B)(2) in its entry. Because we are remanding this case to the trial court for further action consistent with this opinion, we decline to address whether the estate met the requirements of section (B)(2).

common questions must represent a significant aspect of the case. *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 313, 15 OBR 439, 473 N.E.2d 822. Furthermore, they must be capable of resolution for all members in a single adjudication. Id.

{¶ 29} It seems most likely that the trial court denied class certification based on a finding that the estate did not establish that common questions of law and fact predominate given Hadley Funeral Home's use of different contracts and the lack of class-wide damages. Although we do not address the merits of the court's ultimate conclusion, we find that the court's analysis of this factor was erroneous.

{¶ 30} The basis for the estate's action is that Hadley Funeral Home allegedly promised funeral services at a pre-need guaranteed price but actually charged consumers the at-need retail price. In other words, Hadley Funeral Home failed to provide funeral services at the guaranteed price promised in the contracts signed by the consumers. Although we agree with the trial court that consumers who were parties to different contracts underwritten by the various insurance companies may have been promised different price guarantees, our review of these contracts reveals substantial similarities between them. For example, each contract refers to a "guaranteed price" for the funeral arrangements and contains a statement specifying the "guaranteed" and "non-guaranteed" funeral goods and services.

{¶ 31} Instead of examining each of these contracts and determining whether the common elements of the contracts were more pervasive than the differences, the trial court apparently concluded that the mere existence of multiple contracts defeated predominance. "[A] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Lockwood Motors, Inc. v. Gen. Motors Corp.* (D.Minn.1995), 162 F.R.D. 569, 580. If all of these contracts promise that the "guaranteed" price quoted at the time of execution is the price that will be charged at the time of the consumer's death, generalized evidence exists that proves the claims on a class-wide basis. Likewise, if all of the contracts allegedly violate the CSPA in the same manner, class-wide evidence of the claims can be proven despite the differences in the contracts.

{¶ 32} Further, assuming class certification is appropriate, Civ.R. 23(D) permits a trial court to exercise its discretion in making suitable orders to simplify the action. Therefore, subclasses may be redefined by the trial court as a class action proceeds. See, e.g., *Warner*, supra, 36 Ohio St.3d at 95, 521 N.E.2d 1091; *Hamilton v. Ohio Sav. Bank* (1999), 136 Ohio App.3d 273, 279, 736 N.E.2d

511. If the trial court deems it necessary, the court could redefine the subclasses according to the contract that the members of each subclass signed.

{¶ 33} We conclude that the trial court acted unreasonably when it failed to examine the different contracts that potential class members signed with Hadley Funeral Home and determine whether the contract similarities outweighed their differences. The court's finding that the differing contracts preclude certification of the class without any indication as to the materiality of those differences is unreasonable. Because the court failed to follow the appropriate process in determining whether common questions of law and fact predominate, we find that the court abused its discretion.

{¶ 34} We also conclude that the trial court abused its discretion by concluding that individual issues predominate over the common questions of fact where there is no evidence of class-wide damages. In making this finding, the court relied on the Eighth District Court of Appeal's holding in *Hoang v. E\*Trade Group, Inc.,* 151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151. However, we find *Hoang* to be distinguishable from the facts in this case. There, a subscriber brought a putative class action against an on-line brokerage service claiming damages for interruptions in the service. Hoang alleged that, as a result of these interruptions, she and other E\*Trade customers could not execute transactions, that transactions were delayed, and that the putative class members were damaged by these delays. Id. at ¶ 8. The Eighth District overturned the trial court's certification of the class, noting that Hoang's claims required proof of actual damages before liability could be established. Id. at ¶ 19–28. For example, a subscriber who was unable to purchase stock that later decreased in value would not have suffered any harm from his inability to trade and, therefore, would have incurred no damages.

{¶ 35} Here, John Hadley testified that Hadley Funeral Home's standard practice was to bill a beneficiary for the at-need retail cost of funeral services even when the pre-need contract executed by the deceased specified a lower price for the services. Moreover, proposed subclasses one and three as proposed by the estate include only those individuals who were charged more than the prices that were guaranteed or specified in their pre-need contracts. By definition, each of these class members suffered damages if the estate proves its claims. Proposed subclass two seeks declaratory relief for those individuals who have entered pre-need contracts with Hadley Funeral Homes. While the amount of damages suffered by each member of the proposed subclasses one and three will differ depending on the services purchased and the prices charged, it is unreasonable to conclude that the class as a whole did not or will not suffer damages if the estate successfully proves its claims.

{¶ 36} The Ohio Supreme Court has held that differences in damages among proposed class members should not automatically preclude class certification. "[W]e have specifically held, in accordance with the overwhelming weight of authority, that 'a trial court should not dispose of a class certification solely on the basis of disparate damages.'" *Hamilton*, 82 Ohio St.3d at 81, 694 N.E.2d 442, citing *Ojalvo* at 232, 12 OBR 313, 466 N.E.2d 875. Where the calculation of damages is not particularly complicated, the trial court acts unreasonably in denying class certification on the basis of variations in damages. Id.; *Carder Buick–Olds Co., Inc. v. Reynolds & Reynolds, Inc.*, 148 Ohio App.3d 635, 2002-Ohio-2912, 775 N.E.2d 531, at ¶ 55. Here, the putative class members' damages could be easily computed by determining the difference between the guaranteed price contained in each pre-need contract and the actual price billed by Hadley Funeral Homes for the guaranteed services.

### 2. Class Action is Superior to Other Methods of Adjudication

{¶ 37} Civ.R. 23(B)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Civ.R. 23(B)(3) outlines various factors that a court should consider in determining whether a class action is the superior method.

{¶ 38} First, the court should consider "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Civ.R. 23(B)(3)(a). Second, the court must consider the number of cases filed by individual class members. Civ.R. 23(B)(3)(b). Third, the court should consider the "desirability or undesirability of concentrating the litigation of the claims in the particular forum." Civ.R. 23(B)(3)(c). Last, Civ.R. 23(B)(3)(d) instructs the court to consider "the difficulties likely to be encountered in the management of a class action."

{¶ 39} The trial court did not address the applicability of any of these four factors, presumably because it found that common questions of law and fact did not predominate. Because a trial court must make all seven affirmative findings before certifying a class, the court's conclusion that even one of the seven Civ.R. 23 requirements is not present renders findings relating to the remaining factors unnecessary.

### Other Rule 23 Factors

{¶ 40} In its third assignment of error, the estate contends that the trial court would have abused its discretion had it found the estate failed to establish any Rule 23 factor it did not directly address in its opinion. We assume that the court found that the remaining prerequisites to certification were met, as it issued no specific findings as to these factors. In any event, the court has the

opportunity to revisit these factors on remand given our disposition of the estate's first and second assignments of error. And we refer the trial court to the Ohio Supreme Court's recommendations in *Hamilton* that a court make separate written findings as to each of the class requirements and specify its reasons for each finding. Following those recommendations will assist us (and the parties) in understanding the court's decision. The estate's third assignment of error is overruled.

### Conclusion

{¶ 41} We conclude that the trial court abused its discretion by denying the estate's motion for class certification. The court applied an erroneous analysis when it concluded that class certification was improper simply because members of the proposed class signed different contracts and because class-wide damages could not be proven without an examination of the individual claims. Therefore, we find that the estate's first and second assignments of error have merit. We reverse the judgment and remand this matter to the trial court for further consideration consistent with this opinion. We caution the parties that our holding does not require certification of the class or subclasses; rather, the court must appropriately apply the Civ.R. 23 factors to determine if class certification is warranted.

Judgment reversed
and cause remanded.

ABELE, P.J., and KLINE, J., concur.